UNITED STATES, Appellee

v

TOMMY T. RIOS, Private, U. S. Army, Appellant

21 USCMA 547, 45 CMR 321

---

*Captain Robert H. Dickman* argued the cause for Appellant, Accused. With him on the brief were *Colonel George J. McCartin, Jr., Colonel Arnold I. Melnick, Lieutenant Colonel Joseph E. Donahue, Captain Francis X. Gindhart,* and *Captain Gordon W. Hatheway, Jr.*

*Captain James T. Harper* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel Ronald M. Holdaway, Captain Merle F. Wilberding, Captain Richard L. Menson,* and *Captain Walter A. Smith, III.*

## Opinion of the Court

QUINN, Judge:

An encounter with First Lieutenant Juarez led to trial and conviction of the accused of three offenses by a special court-martial, consisting of a military judge sitting without court members. At issue is whether the evidence is legally sufficient to support the findings of guilty of two of the charges, each of which is for willful disobedience of an order by the lieutenant.

Returning to his unit area from division headquarters, the accused hitched a ride in a military vehicle in which Lieutenant Juarez was a passenger. The lieutenant noticed the accused was wearing an unauthorized name tag on his uniform. When the vehicle reached the company area, Lieutenant Juarez also got out of the vehicle. Directly addressing the accused, Juarez said:

"'I'm going to give you a set of instructions. I want you to go inside and see either the First Sergeant or the Executive Officer, Lieutenant Platts. I want you to turn the unauthorized name tag that you have on either to the First Sergeant or to the XO [Executive Officer].' "[1]

The accused remonstrated with the lieutenant. He maintained that he had "'a permanent profile'" for a hearing disability and was "'going home'" and no one could "'stop'" him. Words were exchanged between the two for several minutes. Then, according to Lieutenant Juarez, the accused remarked: "'Why couldn't you have told me yourself . . . to take it off and give it to you?'" The lieutenant answered: "'Fine, take it off and give it to me.'" The accused remarked that if Juarez wanted the name tag, he was "'going to have to take it off'" himself. Without further comment, Juarez got into the vehicle and it "pulled away."

Several differences appear in the accused's version of the conversation. They largely relate to whether the accused had heard all the original "instructions," and we need not detail them. Suffice it to note that the accused acknowledged that he was told to "Rip . . . off" his name tag, and he admitted the name tag "came off" only after Lieutenant Juarez had left.

Determination of the sufficiency of the evidence to support findings of guilty requires consideration of all the evidence in the record, defense

---

[1] Each aspect of the "instructions" was charged as a separate order. It appears from the record, however, that the "instructions" constituted but one order. They were referred to as a single order by the driver of the vehicle, who testified as a Government witness, and by trial counsel, during cross-examination of the accused.

evidence as well as the Government's evidence. United States v Peterson, 15 USCMA 199, 203, 35 CMR 171 (1964). The parties are divided as to whether the totality of the evidence demonstrates delayed compliance by the accused with all the instructions. See United States v Woodley, 20 USCMA 357, 43 CMR 197 (1971). The view we take of the undisputed testimony of Lieutenant Juarez makes it unnecessary to consider the respective arguments.

Lieutenant Juarez' testimony compellingly indicates that he intended the order contained in his statement, " 'Fine, take it off and give it to me,' " to replace his earlier "instructions." He issued the order in response to the accused's suggestion that the name tag be removed then and there before the lieutenant himself. His implicit agreement with the suggestion and the terms of his order clearly contemplated countermand of the earlier "instructions" to go inside the orderly room and " 'see either the First Sergeant or the Executive Officer' " to turn in the name tag. Thus, the new order was a substitute for the "instructions," not an addition or modification of them. United States v Clausen, 20 USCMA 288, 43 CMR 128 (1971). Since the instructions were revoked by the officer who had issued them, they imposed no duty of obedience upon the accused. It follows, therefore, that the accused's conviction for violation of the "instructions" cannot stand. True, the accused apparently violated the substitute order requiring him to take off and turn over the name tag directly to Lieutenant Juarez, but he was not charged with a violation of that order.[2]

The decision of the United States Army Court of Military Review is reversed as to Charge I and its specifications and the sentence. Charge I and its specifications are ordered dismissed, and the record of trial is returned to the Judge Advocate General for resubmission to the court for reassessment of the sentence on the basis of the remaining findings of guilty.

Chief Judge DARDEN and Judge DUNCAN concur.

---

[2] Our conclusion as to the countermanding of the instructions makes it unnecessary to consider the subsidiary question of whether they represented merely an effort to obtain compliance with uniform regulations. See United States v Wartsbaugh, 21 USCMA 535, 45 CMR 309 (1972).